**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Cabilte Anderson,<br><br>                    Petitioner,<br><br>v.<br><br>Eric H. Holder, Jr., United States Attorney General,<br><br>                    Defendant. | No. CV-11-01662-PHX-DGC<br><br>**ORDER** |

Petitioner Joseph Cabilte Anderson filed a petition with the Ninth Circuit Court of Appeals seeking review of a final order of removal entered by the Board of Immigration Appeals on January 21, 2009. Doc. 57-1. The Ninth Circuit remanded the case to this Court pursuant to 28 U.S.C. § 1252(b)(5) for a determination of whether Petitioner is a national of the United States. Doc. 57 at 1.

At the initial case management conference in this Court, the parties agreed that a short period of discovery followed by cross-motions for summary judgment would be the most efficient way to resolve the case. Docs. 68, 69. Discovery has been completed, and Respondent has filed a motion for summary judgment arguing that Petitioner cannot meet his burden of proving a right to citizenship. Doc. 86. Petitioner has filed a cross-motion claiming to be the legitimated child of Harold Anderson, a United States citizen, and to have derived citizenship through him. Doc. 92. The motions are fully briefed (Docs. 94, 96, 97, 98) and no party has requested oral argument. For the reasons that follow, the

Court finds that Petitioner is not a national of the United States. The Court therefore will grant Respondent's motion and deny Petitioner's motion.

**I.     Background.**

The following facts are undisputed. Petitioner was born in the Philippines on December 8, 1974, to Petronila R. Cabilte, a Filipino citizen who was unmarried at the time. Docs. 87, ¶¶ 1-2; 92, ¶ 6. Petitioner's biological father is unknown, but Petronila claims he was an American citizen serving in the United States military. Doc. 93, ¶ 7.

On July 6, 1975, when Petitioner was approximately seven months old, Petronila married Harold Vern Anderson, Jr., a United States citizen serving in the Navy. Doc. 93, ¶¶ 1, 2, 9. Wanting to raise Petitioner as his son, Harold gave Petitioner his last name and registered as the father on Petitioner's birth certificate. *Id.*, ¶¶ 8, 10; *see* Doc. 87-1 at 1. Harold submitted a Report of Birth to the United States Embassy in Manila in 1977 to have Petitioner recognized as a citizen, but the embassy disapproved the application because Petitioner was not his "blood child." Docs. 93, ¶ 18; 87, ¶ 8; *see* Doc. 87-6.

Harold subsequently brought Petronila and Petitioner to the United States as lawful permanent residents. Docs. 93, ¶ 17; Doc. 87, ¶¶ 9-11. Harold executed an affidavit of support, identifying Petitioner as his son and stating that he would "assume full responsibility for [Petitioner's] support and maintenance." Doc. 93, ¶ 12; *see* Doc. 87-3 at 35, Doc. 93 at 44. The family lived in Illinois and California, then Arizona, where Petronila gave birth to two more sons and where they remained until 1995, when Petitioner was approximately 20 years old. Doc. 93, ¶¶ 13-14.

In 1995, the INS received applications for naturalization for Petronila and Petitioner, but these were administratively closed when the applicants failed to appear for scheduled interviews in March 1996. Doc. 87, ¶ 12. Harold died in a car accident in 2001, when Petitioner was 27 years old. Doc. 93, ¶ 19. Petitioner subsequently was convicted of controlled substance and firearms violations and placed in removal proceedings. Doc. 57-2.

## II. Legal Standard.

### A. Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Applicable Citizenship Statutes.

"The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth." *Runnet v. Shultz*, 901 F.2d 782, 783 (1990). There are two relevant statutes at issue in this case, 8 U.S.C. § 1401 and 8 U.S.C. § 1409. Section 1401 provides citizenship to certain persons born outside the United States. In 1974, the year of Petitioner's birth, § 1401 provided that a person shall be a national and citizen of the United States if he is "born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person," meets certain residency requirements. 8 U.S.C. § 1401(a)(7) (1952) (copy provided at Doc. 86-1 at 3) (renumbered in 1978, and referred to herein, as § 1401(g)). Section 1409 applies if the person born outside the United States was born out of wedlock. In 1974, § 1409 provided that the benefits of § 1401 would apply to such

persons only "if the paternity of such child is established while such child is under the age of twenty-one years by legitimation." 8 U.S.C. § 1409(a) (1952) (copy provided at Doc. 86-1 at 6).

The parties disagree about the proper application of §§ 1401 and 1409 to the facts of this case. The Ninth Circuit has issued decisions interpreting both statutes. After reading those decisions with care, the Court concludes that neither statute provides Petitioner with citizenship. Although the Ninth Circuit has held that § 1401 does not require that a petitioner have a blood relationship with his United States citizen parent, it has done so only in cases where the petitioner's parents – whether biological or step-parents – were married when the petitioner was born. *See Solis-Espinoza v. Gonzales*, 401 F.3d 1090 (9th Cir. 2005); *Scales v. INS*, 232 F.3d 1159 (9th Cir. 2000). Where a petitioner's biological parents were not married to each other at the time of birth, and neither parent was married to another person at the time of birth, the Ninth Circuit has held that the person was "born out of wedlock" and therefore must satisfy the requirements of § 1409. *See United States v. Marguet-Pillado*, 560 F.3d 1078 (9th Cir. 2009); *Martinez-Madera v. Holder*, 559 F.3d 937 (9th Cir. 2009). Although the version of § 1409 that applied in 1974 did not expressly include a blood relationship requirement as the current version of the statute does, the Ninth Circuit has held that such a requirement was implicit in the earlier statute. *See Marguet-Pillado*, 560 F.3d at 1082-83.[1] Applying these Ninth Circuit cases below, the Court concludes that Petitioner must

---

[1] As noted above, § 1409 provided in 1974 that the benefits of § 1401 would apply to "[c]hildren born out of wedlock" only "if the paternity of such child is established while such child is under the age of twenty-one years by legitimation." Doc. 86-1 at 6. The current version of the statute provides that a person born out of wedlock is entitled to citizenship under § 1401 if (1) a blood relationship between the person and the father is established by clear and convincing evidence, (2) the father had the nationality of the United States at the time of the person's birth, (3) the father (unless deceased) has agreed in writing to provide financial support for the person until the age of 18 years, and (4) while under the age of 18 years, the person is legitimated under the law of the person's residence or domicile, the father acknowledges paternity in writing under oath, or the paternity of the person is established by a competent court. 8 U.S.C. § 1409(a).

- 4 -

satisfy the requirements of § 1409 because he was born out of wedlock, and that Petitioner cannot satisfy the requirements of § 1409 because he does not have a blood relationship with Harold. The Ninth Circuit denied citizenship in *Marguet-Pillado* on essentially the same facts, and Petitioner's novel state law arguments do not require a different result.

### III. The Government's Motion.

The government seeks summary judgment because Harold is not Petitioner's biological father, Petitioner was born abroad and out of wedlock, and a child born on foreign soil and out of wedlock cannot acquire citizenship through legitimation by a United States citizen who is not his biological father. Doc. 86 at 3-4.

Petitioner argues that the parent-child relationship is determined by state law; that Harold's marriage to Petronila after Petitioner was born, his assumed role as Petitioner's father, and his "holding out" that Petitioner was his son satisfies the requirements for lawful parentage under both California and Arizona law; and that Petitioner therefore is entitled to derivative citizenship under § 1401(g). Doc. 96 at 3-8. Petitioner further argues that the requirements of § 1409(a) do not apply because his legitimation by Harold is retroactive to the time of birth and Petitioner therefore was not born out of wedlock. *Id.* at 6-8. In the alternative, Petitioner argues that even if he was born out of wedlock, he can acquire citizenship under the earlier version of § 1409(a) because it did not require a biological relationship with his father. *Id.* at 8-10.

Petitioner's argument focuses primarily on state law. Petitioner relies heavily on *Anderson v. Holder*, 673 F.3d 1089 (9th Cir. 2012), in which the Ninth Circuit held, on the basis of 8 U.S.C. § 1101(c)(1), that "states, not the federal government, possess 'the power to define what constitutes [legitimacy or illegitimacy], to regulate it, or even to abolish any distinctions founded upon it.'" *Id.* at 1098 (quoting *Lau v. Kiley*, 563 F.3d 543, 549 (2d Cir. 1977)). Section 1101(c)(1) defines a "child" to include a child legitimated "under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere." 8 U.S.C.

- 5 -

§ 1101(c)(1). Petitioner argues that "Section 1101(c)(1) and Section 1401(g) work in tandem to provide that a child who is legitimated before age 21 will receive the benefit of adjudicating his or her derivative citizenship under Section 1401(g)." Doc. 96 at 6. Petitioner asserts that he is a national under § 1401(g) because, at the time of his birth, Harold was a United States citizen who met the residency requirements of § 1401(g). *Id.*

*Anderson* does not support Petitioner's argument. Gary Anderson was born abroad to an English mother and a United States serviceman father. 673 F.3d at 1092. The parents never married, but the identity of Anderson's biological father was never in dispute. *Id.* Years later, when Anderson sought to establish his citizenship, the Ninth Circuit looked to Arizona law to determine whether the requirement of legitimation had been satisfied for purposes of the earlier version of § 1409(a), and concluded that it had because Arizona law provided that "every child is . . . the legitimate child of its natural parents." *Id.* at 1091. Because there was no question that the father from whom Anderson claimed citizenship was "one of Anderson's 'natural parents,'" Anderson was deemed legitimated under Arizona law. *Id.* at 1102. And because legitimation under Arizona turned solely on biological parentage, with no procedural steps required to obtain legitimation, the Ninth Circuit also held that Anderson's paternity was "established" under Arizona law for purposes of the former § 1409(a) even though his natural father never took affirmative steps to achieve legitimation. *Id.* at 1103-04.

Significantly for this case, *Anderson* found citizenship under § 1409(a), not § 1401(g). *Id.* at 1092. *Anderson* did not hold, as Petitioner argues, that legitimation under state law means that a person was not born out of wedlock and therefore need not satisfy § 1409(a). If that had been its conclusion, *Anderson* would not have based its decision on § 1409(a). *Anderson* simply does not support Petitioner's claim that his legitimation under state law means that he now qualifies for citizenship solely under § 1401(g).

Petitioner's reliance on *Solis-Espinoza*, 401 F.3d 1090, is equally unavailing. The Ninth Circuit held in *Solis-Espinoza* that the child of a Mexican-citizen father and his

Mexican-citizen mistress derived United States citizenship under § 1401 from the father's United States citizen wife to whom the father was married at the time of the child's birth. 401 F.3d at 1093. The Court of Appeals held that because the child's father was married at the time of the birth – even though to someone other than the child's biological mother – the child was not born out of wedlock and § 1409 did not apply. *Id.* In reaching this conclusion, the court relied on *Scales*, 232 F.3d 1159, which held that a child born abroad to a Filipino mother derived his citizenship from the mother's United States serviceman husband who was not the child's biological father but who married the mother before the child's birth. As a result, the child was therefore not born out of wedlock and § 1409(a) did not apply. 232 F.3d at 1163-66. Thus, in both *Solis-Espinosa* and *Scales*, the child claiming derivative citizenship was born into a marriage between an alien and a United States citizen and was not subject to § 1409 and its blood relation requirement.

Petitioner argues that, as in *Solis-Espinosa*, the precise factual circumstances of his birth should not be used to trump his legal status as Harold's child under California and Arizona law, and that this legal status – not the "historical facts" – shows that he was not born out of wedlock for purposes of acquiring derivative citizenship. Doc. 96 at 7-8. This misconstrues the Ninth Circuit's reasoning. In *Solis-Espinosa* the court did not ignore, but expressly looked to, the factual circumstances of the child's birth (birth into a marital relationship that included a United States citizen) to determine that § 1401(g) had been satisfied and that the requirements of § 1409(a) did not apply. 401 F.3d at 1093-94. The same factual circumstances do not exist here.

Petitioner does not claim that Harold was married to his mother at the time of his birth or that Harold is his biological father, and cites no case that has looked to state law for purposes of acquiring derivative citizenship under § 1401(g) absent one of these facts. And as the government argues, the Ninth Circuit has squarely addressed and rejected just such a proposition.

In *Marguet-Pillado*, the Ninth Circuit rejected a claim of derivative citizenship by the foreign-born child of a Mexican-citizen mother who, after the child's birth, married

- 7 -

an American citizen who was not the child's biological father. As in this case, the citizen stepfather placed his name on the child's birth certificate and assumed full parental responsibility for the child. 560 F.3d at 1080. After discussing the applicable law, including § 1401(g) and the former version of § 1409(a), the court stated: "we find no authority for holding that a child who was born out of wedlock, neither of whose natural parents was a United States citizen at the time of his birth, nevertheless acquired derivative citizenship at birth because of some later action by a United States citizen." 560 F.3d at 1084. The Court of Appeals distinguished *Solis-Espinosa* and *Scales* because in both cases the petitioner's parents – a biological and a step-parent – were married at the time of the petitioner's birth. *Id.* at 1083.

Similarly, *Martinez-Madera* involved a claim of derivative citizenship by a Mexican-born child of an unmarried Mexican-citizen mother who subsequently married a United States citizen. 559 F.3d at 939. As in this case, the citizen stepfather treated the child as his own and raised him along with the child's step-siblings in the United States. *Id.* The Ninth Circuit specifically rejected the claim made by Petitioner in this case that the child was not born out of wedlock because he subsequently was legitimated by his United States citizen stepfather under California law. *Id.* at 942. In so doing, the court stated that the authority relied on by the petitioner "does not hold that an alien parent who is unmarried at the time of the birth of a person who later claims citizenship may be deemed to have been married to a citizen at the time of birth." *Id.*

Petitioner argues that the Ninth Circuit's position with regard to the operation of § 1409(a) in *Marguet-Pillado* is inapplicable because the petitioner in that case did not claim to have been legitimated under state law, whereas Petitioner claims legitimation under both California and Arizona law. Doc. 96 at 9. The fact that *Marguet-Pillado* did not discuss state law standards for legitimation, however, does not diminish the relevancy of the court's ruling. The Ninth Circuit soundly rejected the argument that a petitioner could establish paternity under § 1409(a) through subsequent actions by his citizen stepfather. 560 F.3d at 1082-84. That is precisely the argument made by Petitioner in

- 8 -

this case. Moreover, the Ninth Circuit has implicitly rejected Petitioner's argument that the application of § 1409(a) depends on state law, holding that the Immigration and Nationality Act was designed "to implement a uniform federal policy," and that "[i]nterpretations of the [Act] that vary according to state law are not permissible." *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 913 (9th Cir. 2004) (internal citations omitted).

Petitioner also argues that *Martinez-Madera* wrongly cited the current version of § 1409(a) and therefore based its holding on the wrong statute. Doc. 96 at 9; *see Martinez-Madera*, 559 F.3d at 941, n. 1. Although it is true that the Ninth Circuit erroneously quoted the current version of § 1409(a) in a footnote, the court based its conclusion that § 1409 requires a blood relationship on cases discussing the purpose of the original statute. *Id.* at 942 ("As we said in *Scales,* 'Moreover, § 1409 clearly was enacted "at least in part, to ensure that a person born out of wedlock who claims citizenship by birth *actually shares a blood relationship* with an American citizen."' 232 F.3d at 1164 (quoting *Miller,* 523 U.S. at 435, 118 S.Ct. 1428) (emphasis added))." What is more, the Ninth Circuit clearly took the same position in *Marguet-Pillado* while discussing the former version of § 1409(a). *See* 560 F.3d at 1082 (rejecting argument that former § 1409(a) "does not encompass a biological relationship"); *id*. at 1085 (concluding under the former version of § 1409(a) that "Carlos Marguet was not entitled to derivative citizenship because he did not have a blood relationship to Michael Marguet."). Thus, the Ninth Circuit clearly has held that the version of § 1409 in existence when Petitioner was born required that Petitioner have a blood relationship with Harold.

In summary, despite Petitioner's purported legitimation under California and Arizona law, he was born out of wedlock under *Marguet-Pillado* and *Martinez-Madera* and therefore must qualify for citizenship, if at all, under § 1409(a). As in *Anderson*, *Marguet-Pillado*, and *Martinez-Madera*, Petitioner's sole path to citizenship is § 1409(a). Because that statute in 1974 required that Petitioner have a blood relationship with

- 9 -

Harold, and he admittedly does not, Petitioner cannot qualify for citizenship and the government is entitled to summary judgment.

### III. Petitioner's Cross Motion for Summary Judgment.

The Court will deny Petitioner's cross motion for summary judgment for the reasons stated above. His motion includes several pages of arguments regarding California and Arizona legitimation laws that Petitioner assert as the basis for his citizenship claim. *See* Doc. 92 at 4-12. In light of clear Ninth Circuit case law holding that subsequent actions of a stepfather do not establish paternity under § 1409(a), *Marguet-Pillado*, 560 F.3d at 1082-84, Petitioner's state-law legitimation is not relevant and the Court need not address his state-law arguments.

**IT IS ORDERED:**

1. Respondent's motion for summary judgment (Doc. 86) is **granted**.
2. Petitioner's cross motion for summary judgment (Doc. 92) is **denied**.
3, The Clerk is directed to terminate this action.

Dated this 10th day of July, 2012.

David G. Campbell
United States District Judge

- 10 -